The next matter, number 221157, United States v. Henry Salvador Gutierrez. At this time, Mr. Super, please introduce yourself on the record to begin. Thank you. Good morning, Your Honors. I'm Stephen Super. With me is Attorney George Gormley, and together we represent Henry Salvador Gutierrez. So, what I'm asking this panel to do, I think, is, on the surface, is pretty simple. I'm asking for a reconsideration of a guideline to be read in its pure form. It's a simple, straightforward guideline. I ask for it to be given its plain meaning. On the other hand, I understand that I'm asking you to reverse First Circuit precedent that's been here for 20 years, and I realize that that's a more complicated issue. But whether this... Are you saying there's some law of the circuit exception that it falls within or not? It's fine if not, but I didn't really grasp whether you were making that point or not. Well, in reading over the cases of the law of the circuit doctrine, which is something I don't even remember looking much at law school, but I've learned a lot about it, I understand that this court takes a lot of weight on if it's a Supreme Court case that turns it over. In the first exception, the Supreme Court gives you a ruling afterwards that is in direct contradiction to what the circuit says. In the second case, there is authority that's not controlling that comes out that might influence the panel to reverse its earlier decision. And in my initial reading of that, it occurred to me that there are other authorities like other circuit courts, but at least one more recent case, this court clarified that it's a Supreme Court case that should overturn it. I don't think that should be the case, but I understand why that would be a much more weighty authority. But the reality is that the other circuits don't interpret this particular rule as it is. Let's, for the sake of argument, assume that Patrick doesn't exist in this circuit. And we can look to other circuits. The majority of circuits seem to have taken a slightly different interpretation. Not slightly, a different interpretation than Patrick. Did the trial judge also find, or is there a record to support, that this defendant took affirmative acts of his own in using minors? So if we're analyzing this case, even under the other circuits? Yes. So we had a hearing on this very issue, whether or not the use of a minor could be applied. Because it was applied. There were six defendants in this. But that's not my question. My question is about whether there were affirmative acts here by the defendant. The court found that there were. And what I'm trying to explain is that he made this finding after the ruling. After he ruled that the enhancement would apply to Henry, as well as the other defendants who were fighting it. The findings that he made were not anything that we discussed during the hearing. He had gone into the discovery and some grand jury minutes that had never been discussed in court. And he found that those were incidents. So we didn't really get a good chance to argue that. And frankly, we would have argued vociferously that those do not amount to the plain meaning of the guideline, even without Patrick. For instance, one of the things that he mentioned was that when this group murdered a young man, named Herson Rivas, that Henry said to a minor that was there, because it was a group of five people, one was under 18, he said to move over. That's not a direction. I'm sorry, that's something you tell someone on a couch if you're going to watch Netflix. It's not telling someone to commit a crime. And the guideline, as I understand it, is using someone under the age of 18 to help commit a crime or to have that person commit the offense, or help you avoid detection in committing the offense. And move over is not a direction to commit a crime. It's a direction to get out of the way. You're not disputing that there's sufficient evidence in the record to support the finding that he said move over. I'm not disputing that. Right. And so then do you take a position on appeal in your briefing about how we review whether the supported finding that he told a minor to move over would qualify as a use of a minor under your reading of the reg? Well, I discussed that in the terms that it does not fit this, the plain meaning of this rule. But the point is that we didn't have that argument. Because the discussion that we were having was whether or not this could apply in a conspiracy. And Judge Wolf, when he was... But I guess there's two different things. There's a factual finding, a brute fact finding. He said move over. No one's disputing that. There is such a finding. Did the sentencing judge then go on to find that is a use of a minor even under the reading of the guideline that you're proposing? Yes, he did. Okay. And notwithstanding that finding having been made, on appeal I didn't understand you to be challenging that finding as opposed to just the interpretation of the reg. Do you follow? I do follow. And perhaps I didn't put it as artfully in the reply brief as I... But it didn't come out of left field by the time of the appeal. Right. But we had objected to every instance that they... So, okay, just with respect to this issue. So now there is a finding that he said move over and there is a finding that that's a use of a minor even under your reading of the guideline. No. Oh, okay. No, I'm not agreeing that that... No, no. A finding by the district court, not a correct finding. A finding that even under your reading of the guideline that's a use of a minor. That exists in the record. Yes, Your Honor. Okay. And your position is what do we review that finding? Is that itself clear error? Do we review that de novo because it's a mixed question? Do we review it for abuse of discretion? Was there an objection made to that finding below to the sentencing judge? To that specific instance, no. So we'd be on plain error with respect to that? That's correct. So in that sense, if we concluded it wasn't plain error, even if we accepted your view that Patrick doesn't control, I take it that follows you still would have a problem then? Correct. Okay. The way it seemed to play out in court was that the judge and the government was bound to make this stick one way or the other. And because the main question, sorry we kept harping, the main question was that this should not apply in a conspiracy. And in rereading Patrick, it doesn't appear that the First Secretary has really said that it must apply. Patrick's holding appears that it could be applied in a conspiracy to co-conspirators to who is reasonably foreseeable that minors would be used. Now that throws a little bit of a different wrench into it. But the bottom line is that the district court thought he was mandated by the First Circuit to apply it. And then he said, well, and then there's also this other thing, this move over. So I still think that's the basis of this appeal. Could you just address before we wind up, there's a separate contention the government makes, if I'm reading it right, which is that the sentencing judge made clear that even apart from this guidelines dispute, the sentence should not apply. It should have been the sentence that he imposed in terms of length. And we do have precedent that suggests that would render it harmless, even if you were right about the procedural violation due to the misapplication of the guidelines. What's your response to that? My response is yes, Judge Wolf did pay lip service to that. Our contention is that once the guideline was set at life, at 43, because he was the only defendant in that case that had life, that was the end of the game. I don't see anything in the record where he ever considered any other sentence besides life. Can I ask you this? So without the two-point enhancement, the guideline would be 41, right? 42, I think. All right, 42. It would be 360 to life. So at that level, of course, there would be a range. At level 43, there is no range. And I can't say with any certainty right now that if we succeed and we get him resentenced, we're not going to ask for time served. We would ask for something quite large. But there's nothing to say that the judge wouldn't come back, or even a different judge, to say, well, yeah, I think life was probably the right decision. But I think that his sentencing guidelines were miscalculated in that sense. Thank you. Thank you, counsel. At this time, Attorney Mark Quinlivan, please introduce yourself on the record to begin. Chief Judge Barron, and may it please the Court, Mark Quinlivan on behalf of the United States. As has been discussed, the district court made two alternative rulings as to why the use of a minor enhancement applied in this case. And each of those is amply borne out by the record. And let me talk about what the record showed with respect to this alternative finding. It was based on a proper session of a cooperating witness that was attached as Exhibit 16 to the government sentencing memorandum. And in that proper session, the cooperating witness described how this, quite frankly, barbaric murder of Herson Rivas occurred. Rivas was lured to a park in Lynn by members of the Psychos Logos Salvatrucha clique of MS-13. But maybe if you could just focus in on the two findings, or the findings of the trial judge, and specifically, even if we accept your opponent's arguments in terms of how to interpret the enhancement here, did the trial judge make findings under that theory? The judge, yeah, Judge Montegova said that the finding was, and it goes into the description that I had, which was that they lure Rivas to the park. One of them has a bag of knives, which they slowly start to bring out. Silencio, that's Reyes, then comes around and stabs Rivas in the front. It's at that point the cooperating witness says that the defendant tells him, move over. The defendant now has a knife. He begins stabbing Rivas. Peligroso, that's Vacareno, he has a machete. He begins hacking at Rivas. But can I understand, it's the move over direction? Yes. But does it matter that even if he was 19, he would have told him to move over? I don't believe so. Under the non-Patrick interpretation of the guideline, is it irrelevant that the use being made of the person who is a minor is a minor? I thought the idea was that the whole idea here was that there's an interpretation in which it matters that the person is a minor, and then there's another interpretation in which it doesn't matter that the person is a minor. And my recollection, and I apologize if I'm mistaken on this, but my recollection of the case law is that it's almost an objective fact. Was that person under 18? Even under the other circuits? I can't speak as to every other circuit. I have seen at least some circuits have said that it's sort of a form of strict liability. It's just simply whether or not the person was under 18. Just going back, the factual finding of move over, when he's saying move over, it's not saying move over, we're sitting on a couch. It's when the defendant and the other members of the clique have their knives out, and it's right before the defendant then begins stabbing Rivas to death. This may be my confusion more than yours. What do you understand our position to be under Patrick? I understand this court's position to be that where a defendant is charged with conspiracy, as in this case, under the relevant conduct guideline, the defendant is responsible for actions, if it was reasonably foreseeable, that a co-conspirator would use a minor in the commission of the act. And so the district court found that that was proven. And what is your understanding of what our position is as to what counts as using a minor? Well, I believe the only cases I've seen where this has been applied is Patrick, and then in Corbett. Corbett is one where this court noted in a footnote the circuit split about Patrick and said it didn't need to, it wasn't material in that particular case because the defendant there used a minor. In what sense, when you say that phrase? Well, the guideline commentary itself defines use or attempted use of a minor to include directing, intimidating, several different terms. The district court found that telling the cooperating witness who was a minor to move over when he has a knife and is about to stab Rivas was a form of directing a minor. Last couple of questions on this one. With respect to that finding, I take it your view is that we'd be on plain error with respect to it? Two answers to that question. I think our preliminary position would be that it's outright waived because it wasn't addressed at all in the opening brief. It's waived for a second reason as well, and I do want to respond to one argument in the reply brief, which is they didn't get an opportunity to cross-examine the cooperating witness. I just direct your court's attention, after the government had submitted its sentencing memorandum in this case, and that was December 22nd of 2021, the district court entered an order, and that's docket entry 807, in which it asked several questions, including specifically, does any party want to call witnesses at the sentencing here? And the defendant responded on January 20th, that's docket entry 813, and said, we don't want to call any witnesses at the sentencing hearing. So any claim that they were prejudiced is waived, because they expressly foreswore the opportunity to call witnesses. There was no objection after the district court made the ruling that it did in this case, as to this alternative ground, so it would, yes, Chief Judge Barron, that claim would be on plain error, but for the fact that the plain error standard isn't addressed in this brief, so that's another reason why the claim is waived. And on the issue of whether the sentence would have been the same independent of the guidelines issue, we have a case law about this, it's not always entirely clear to me when we're supposed to conclude that, and when we're not supposed to conclude that, and there is the concern that, particularly when it's a life sentence, how much the reign was sort of the anchor for the judge's decision, here does the government, I take it the government's view is notwithstanding that wrinkle, the record here is best read to be that the judge clear-eyed made a decision that, even if the reign was 360 months to life, it would be the same sentence. Yeah, that's correct, and I think I just would point out, you know, first off, at the first part of the sentencing hearing, the district court indicated that, at the end of the day, the findings as to the guideline enhancements, in its view, wasn't going to matter with respect to the overall sentence. But then he took a step back, he then entered an order and said, you know, the government has argued that it should, and so I want the parties to address that at the sentencing hearing. When the district court imposed the sentence, he repeatedly said that this was the only appropriate sentence in this case. He said that in 37 years of sitting on the bench, he had never seen a defendant who was more hopeless than the defendant in this case. He noted that two of the co-defendants, Tercero and, I can't remember the others, but that he had found that there were some redeeming, or that they were not hopeless, and therefore a different sentence was in order, but he had scoured through the record, and he could not find anything that indicated that that was the same with respect to the defendant. He said that a sentence of life imprisonment was necessary to protect the society from further crimes. There's nothing in that second round, though, where he makes clear, or is there something where he makes clear that all those statements are not anchored by the range he thought of supplying at that moment? I think the only time where he anchors that, Chief Judge Barron, is he does say that, I think it's under 2A1.1, a life sentence is the appropriate sentence when murder is at issue. We're talking about two murders in this case, and he said, you know, I don't presume that the guidelines are reasonable, but I find that they're reasonable in this case, and then repeats, again, several of the statements, including that this was as hopeless a defendant as he had seen in 37 years of sentencing defendants. So for those reasons, any possible error would be harmless. Can I just ask one more question? So I just want to circle back to the affirmative acts. I understand your position on the move over, the testimony about move over. Did the trial judge find any other? He did, but not with respect to the defendant. There was another one of the co-conspirators who told the cooperating witness, I think it was to leave the gun in the bag, and so he did make that alternative finding as to that separate defendant. With respect to this defendant, it was only the move over. And the testimony regarding recruitment, ongoing recruitment, what is your position the record reflects on that? So the district court relied primarily on the grand jury testimony of a different cooperating witness who described that over a course of a year, he had met with several of the members of the psychos clique, including the defendant, that they had told him about the MS-13 operation, how the clique operates, how this particular clique operates, including killing rivals, and that that was a form of the recruitment process, and then that he was shown a video of MS-13 actions, and that that was not only a form of training, but also was a form of intimidation. And I know Judge Montecalvo, it's also that my understanding from the defendant's brief, is that he's challenging the correctness of the Patrick decision, but is not arguing that if Patrick indeed is the law of the circuit, that the district court erred in finding that it was reasonably foreseeable to the defendant that other members of the conspiracy would use or attempt to use a minor. Is there a finding that the recruitment was a use? Yes, because that individual also was a minor. Okay. Thank you.